Thomas Coleman being the administrator of William Coleman, sold to Rhoda Coleman, the widow of the said "William, or permitted her to take, at the appraised value, sundry articles of personal property belonging to the estate of the said William, to the amount of $551 28; and, at the bottom of the list of the said articles, the said Rhoda Coleman executed and delivered to the said Thomas the following receipt and pledge:
"Received April 9, 1829, of Thomas Coleman, administrator of William Coleman, deceased, the sum of $551 38, it being in full for my one third part of the personal estate of the afsd. William Coleman, deceased; and I do hereby promise, agree and oblige myself and my heirs, executors and administrators that whatever sum there may be overpaid to me by the said Thomas Coleman, over and above my one third part of the personal estate of the afsd. William Coleman, deceased, that I will refund and pay back to him the said Thomas Coleman, or to his heirs or assigns, on demand, with interest from this date. And I do further agree, and it is understood (by the parties) that the property in the within inventory mentioned shall be and remain bound and. liable for the payment of such sum of money so overpaid to me by the said Thomas Coleman as administrator as afsd., and that the right and property of all the said goods and articles is and shall remain in the said Thomas Coleman until such sum of money is fully paid and discharged. Witness my hand the day and year above written.
 (Signed.) RHODA COLEMAN.
Witness present — Comfort Hudson."
On a settlement of the estate of William Coleman there appeared to be a balance due the said estate of $1017 12, the one third whereof $339 04 was the share of the said Rhoda, making the sum overpaid her as afsd. $212 34. William Coleman died in March 1829. In August 1829, Rhoda Coleman, his widow, married Peter Waples, into whose possession the said property went, and in February 1830, the said Rhoda died.
Coleman filed his bill charging that the said receipt and agreement created a lien in his favor on all the said property in the nature of a pledge or mortgage for the sum so overpaid to Rhoda Coleman; and insisting that the said property was subject to such lien in the hands of Waples whom he treated as a trustee. Waples in his answer admitted all the material facts in the bill; but insisted that he took the said goods under no lien or trust whatever; that on a change of thepossession of the goods the receipt and agreement could operate only to establish a debt due from Rhoda Coleman, his late wife, for which he was not now answerable. On the hearing below the Chancellor dismissed the complainant's bill, and from this decree an appeal was taken. *Page 197 
 Frame for the appellant.
The principal question in the cause is, whether these goods, traced as they are to the hands of Peter Waples, the respondent, are bound specifically by the agreement of his late wife; or whether they are discharged in his hands from any such lien. The chancellor decided they were not liable, but the cause was not debated. First. What was the effect of this agreement as between the original parties? Were the goods bound in the hands of Rhoda Coleman, before her marriage with "Waples? The chancellor considered it in the nature of a pledge or pawn, which, the pawnor keeping possession, created no lien. But viewing it in that light it would, not be void as against the pawnor, but only against bona fide purchasers and creditors. It would be binding as between the original parties although the possession was retained by the pawnor. Where there is a written contract of pledge, the pledgor, though retaining possession is hound by it. I agree to the general principle, that a pawn is void without delivering possession, because the keeping possession is a badge of fraud. But this fraud can only relate to third persons; and, as the reason of avoiding the contract does not apply to the original parties, the contract is not void as relates to them. The authority of Kent must be so "understood. 2 Kent Com. 581.
But this is not a mere pawning; it is distinguishable in at least one of the most striking particulars, the property namely, being vested in the pawnee. This is a mortgage, and the distinction between a pledge and a mortgage is that in the former the general property remains in the pawnor and the pawnee has merely a special property; in a mortgage the general property vests in the mortgagee and a special property only in the mortgagor, to wit: the right to redeem. A mortgage of goods may be good without delivery. In this case the parties expressly agree and contract that the general property shall remain and be in Coleman the mortgagee; This contract is therefore a mortgage. It would require no precise form of words even in a court of law to make a mortgage much less in equity where the intent of the parties will be sought and executed. If the terms implied an absolute contract of sale, this court would make it a mortgage if the parties so designed it. 2 Kent Com. 577; 2 Caine's Cases in Error 202;Whitaker's law of liens 128; 5 Bac. Abr. 6. tit.Mortgage B. Rhoda Coleman being bound by this agreement; the mortgage being valid as between Coleman and her; the next question is, whether her husband is also bound. This proceeding is not to charge the husband of a deceased wife with her debt, we contend for no such principle: but the question is whether these specific goods, traced as they are into his possession, bound at the time of going into it by a mortgage, are not still bound, or are they discharged? Upon what principle are they discharged? We have shown that Mrs. Coleman transferred the general property in these goods to the complainant. Peter Waples married her and took her rights and no more. Upon what principle of law or equity could he obtain a right in this property which she had not? The proposition thus stated shows its absurdity. It is against all the principles of law applicable to husband and wife. How should the marriage enlarge her property, or divest the complainant's lien? Is it the possession of *Page 198 
the wife, or the want of notice to the husband? That possession is not incompatible with the mortgage, or even with a naked pledge as relates to the wife; and the husband, taking merely by force of the marriage, stands precisely in the same condition. The chancellor's error was in treating the husband as a purchaser, coming in on a consideration. I admit that marriage is frequently a valuable consideration, but it must be in a case where a consideration applies; as in marriage articles, settlement, jointure, c. The consideration is always connected with a contract; but there is no such thing here: the husband takes the wife's rights by force of law, and he takes them subject to all the equities connected with them. He can take no interest larger or other than that of the wife. A husband taking by marital right is not esteemed a purchaser for a valuable consideration. He takes the right of the wife. And notice isimmaterial. The husband cannot be defrauded in this respect, and is not entitled to notice. It is not pretended that this thing was done on the eve of marriage to defraud the husband. This does not fall within that class of cases. Clancy on married women 1. 2; 2Blac. Com. 433; 7 Vezey, jr. 184; Dig. 75; 2 KentCom. 515.
If I have shown that there is no difference between the wife and the husband in relation to the lien on this property, the decree is erroneous and must be reversed. And this though it should turn out on an account taken that nothing is due to complainant. The proof on the other side does not go to the fact that there has been an over payment by the, administrator, but only that he has not fully administered. The chancellor then should have retained the bill and ordered an account.
Mr. Layton, for appellee.
The counsel is mistaken with regard to the ground on which the chancellor decided this cause. He regarded this as a sale of the articles, and referred to the act of assembly avoiding bills of sale unaccompanied by possession.
This agreement is on the part of Rhoda Coleman, an acknowledgment of a debt upon a contingency; that if on a settlement of William Coleman's estate it should be found that the $551 29 was more than One third of the estate, she would repay the excess. The complainant has not made a final settlement of the estate of William Coleman, nor has he filed in the register's office a list of debts, c. The agreement is binding merely as a debt due from the wife, for which the husband would be liable if sued during his wife's life, but not after. 3 P.Wms. 410; 1 Sch. Lef. 263; 1 P. Wms. 462. The complainant having omitted to pursue the only remedy to which he was entitled while the husband was liable must now abide the legal consequence of his neglect.
We don't contend that this agreement is a pledge merely of the property. Yet there is a distinction between mortgages of real and of personal estate. The possession of personal property is evidence of title. Thomas Coleman suffered Rhoda to appear to the world as the owner of this property. It was a fraud on the public; a fraud on the appellee. The property thus in her possession might have been the consideration of his marriage. The agreement is analogous to a bill of sale, and void by our statute. (Digest 75.) In this *Page 199 
case the husband will be considered a purchaser for a valuable consideration. Whit. on Liens 65; Robts. on Fraud, conv.
103, 4. If a person advances money on the credit of a pledge of goods not delivered, it is a mere personal credit and not a specific lien. 1Atkins. 194 (105.) Mortgagees of goods permitting a bankrupt to remain in possession have no specific lien against general creditors. 1 Yes. sen. 348.
J. M. Clayton, for the appellee.
The first consideration is the distinction between real and personal property; between conveyances, mortgages and conditional sales of real and personal property. In the case of conditional sales of lands, annuities, grants on land, c. the third party affected by the condition or lien is bound to look at the title. Precisely the reverse is the law of personal estate. The possession is always evidence of title. In case of an annuity charged on a leasehold the marriage will not avoid the mortgage, but all conditional sales of goods where the party remains in possession are within the statutes of Jac. andEliz. And in all cases where the marital rights come into collision with claims under conditional sales of personal property within those statutes, the husband will be regarded as a purchaser and take on the idea of a consideration. The statutes of fraud are declaratory of the common law. A mortgage equally with a sale of goods is fraudulent and void if possession be not given: void as against purchasers without notice. That is this case. Waples is a purchaser without notice. The arrangement held out a fictitious credit to the world and operated as a fraud. Complainant sold the goods to Rhoda Coleman and gave her possession; took from her on the same day a receipt contradicting the sale and attempting to keep the title to the property. Rhoda Coleman continued in possession and seemed the owner to the world. Waples married her and the complainant now seeks to charge him on this defeazance. Does not this come within the danger of fraud; does it not actually operate a fraud on Waples? If he was merely liable to be defrauded, he is protected by the common law of which the statutes of frauds are only declaratory. The case in 7Vezey is an annuity On a rent charge, charged on a chattel real and registered. We don't contend that marriage would remove such a lien. There the husband is bound to look to the title. 1 Burr.467; Fitzgibbon 207, 212; Bob. Fraud. 557, 101. 5-6; 2Kent Com. 515, 523-4. If this be a mortgage of the goods it carried the legal title in them to Thomas Coleman, and is void for want of possession. It is of no importance whether it be considered a pawn, mortgage or absolute bill of sale; it is equally void. The effect of it is a surrender on the part of Rhoda Coleman of the title to the property while she retains possession. This is fraudulent and void.
Again. The right to recover back is by the terms of the instrument to accrue upon ascertaining an overpayment by a settlement of the estate. It is in proof that the estate is not settled. How then can there be a recovery until it appears that something is due.
Frame in reply.
Was directed to confine himself to the question whether the husband was to be considered in this case a purchaser for a valuable consideration. *Page 200 
The idea of a purchaser for valuable consideration implies a contract. Purchase has a specific legal meaning; it implies a sale and a vendor. The statute frauds applies to such purchasers and to creditors, It does so with reason, because such might be defrauded by the simulative ownership attendant on the possession, but this reason fails in the case of a husband. How can he be defrauded? He may be disappointed, but he takes the legal result of his marriage, the rights simply of his wife. The possession of property by the wife cannot be called a consideration for the marriage though it may form an inducement to it. The proposition that a husband by force of the marriage becomes a purchaser of the wife's property is absurd. I agree that where a sale is made, or other contract, in consideration of marriage, it is a valuable consideration, but this is not that case. The husband here takes no title from the act of the wife, but altogether from the act of the law; by operation of law. The case in Vezey is express, "The husband taking by marital right is not esteemed a purchaser for valuable consideration. How can the character in which the husband takes be varied by the kind of property whether real or personal? It may vary as to the effect of the conveyance but not as to the character of the taker. Roberts relates to conveyances, andKent to purchasers and creditors. 1 Black. Com. 461; 1Vezey, sen. 348; 1 Atk. (165) 194.
The court reversed the decree of the chancellor and decreed an account to be taken.